RANSOME SWANGER, APPELLEE, V. EDWARD PORTER ET AL.,
APPELLANTS.

FILED NOVEMBER 16, 1910. No. 16,179.

1. **Waters:** MUTUAL IRRIGATION COMPANY. An irrigation company or-
ganized under the laws of this state, which has no source of
income, derives no revenue from the operation of its ditch or
canal, and conducts its business solely for the purpose of irriga-
ting the lands of its members and stockholders, is, *de facto*, a
mutual irrigation company as defined by section 6845, Ann. St.
1909.

2. ———: ———: BY-LAWS. Such a company may adopt by-laws
regulating the use of the water it has appropriated, by its stock-
holders in turn, and require each of them to contribute his pro-
portionate share to a maintenance fund to enable it to carry on
the enterprise, and may make the payment of the same a condi-
tion of the right of the stockholder to receive water to irrigate
his land; and, where such by-laws are agreed to and signed by
all of the stockholders of the corporation, the courts will recog-
nize and enforce the same as a valid contract binding alike upon
all of them. *Omaha Law Library Ass'n v. Connell*, 55 Neb. 396.

3. **Mandamus:** IRRIGATION: USE OF WATER. Where, in such case, a
stockholder refuses to pay his share of the maintenance fund,
he is not entitled to a writ of mandamus to compel the corpora-
tion to furnish him water for irrigation purposes.

APPEAL from the district court for Cheyenne county:
HANSON M. GRIMES, JUDGE. *Reversed and dismissed.*

*G. J. Hunt,* for appellants.

*Wright, Duffie & Wright,* contra.

BARNES, J.

Action in mandamus to compel the respondents to fur-
nish the relator, who will hereafter be called the plaintiff,
water for irrigation. The plaintiff had judgment, and the
defendants have appealed.

It appears that in the year 1891 the defendant, the
Court House Rock Irrigation Company of Cheyenne

county, was incorporated for the purpose of constructing and maintaining an irrigation ditch and appropriating the water of Pumpkin Seed creek with which to irrigate the lands of the incorporators, and for other purposes; that in 1893 the articles of incorporation were amended, and it was therein provided that the authorized capital stock of the company should be $6,000, divided into 60 shares of $100 each. The irrigation ditch was constructed, the water appropriated, and it was found that the supply was insufficient to carry out the original plan, and therefore only 30 shares of stock were issued, which are now owned by members and stockholders having land under the ditch, and which can be irrigated thereby. It was also ascertained that the flow of water was insufficient to enable any two of the stockholders to use it at the same time, and therefore, by mutual agreement, the ditch was divided into sections, and each irrigator was given the entire use of the water for a certain number of hours in turn, and thus all were supplied to their mutual satisfaction. It also appears that the plan thus adopted has been in operation for more than 12 years without complaint or objection on the part of any of the stockholders until the commencement of this action.

The plaintiff was not a charter member of the corporation, but became a stockholder at so early a date that one of his shares of stock is among those first issued. Article 10, sec. 1 of the by-laws duly adopted by the association, provides: "At the meetings of the board, held on the second Tuesdays in January and July, the board shall make an estimate of the current expenses of the company, and also of the repairs, alterations and improvements to be made, and shall then make an assessment upon the stock sufficient to pay the same, which assessment shall be paid by the shareholders to the secretary of the company on or before any water is delivered to said shareholders." The concluding clause of the by-laws is as follows: "The undersigned stockholders do hereby agree to be governed by these by-laws." Appended thereto ap-

pears the signature of the charter members and every owner of stock, his signature having been placed there when his certificate was issued or was presented for transfer, and the plaintiff admitted that he signed the by-laws.

The record discloses beyond question and without dispute that the ditch is not now, and never has been, operated for profit, and the corporation has no source of revenue whatsoever; that the expense of maintenance has to be met by an equal and proportionate charge upon all of the stockholders. It also appears that it is absolutely necessary to have the ditch cleaned each spring before water can be turned into it; and in case of a break, or other damage, it must be repaired at once, or all of the stockholders will suffer alike; that this work must be done whether each particular shareholder exercises his right to take water or not; that the company has no control over that matter and no means of knowing in advance whether or not any particular shareholder intends to use water; that the only possible way of operating the ditch is to make a close estimate of the cost of maintenance and divide the total cost by the number of shares, and call on each shareholder for his portion thereof. It is also shown that the plaintiff has in times past served upon the board of directors; that he has paid his assessments and used water in previous years under the manner of distribution adopted; that he is now the owner of two shares of stock, and that he has allowed his assessments to remain unpaid for a number of years. It also seems apparent that he conceived an idea or plan of avoiding the payment of his delinquent assessments, and in order to carry it out, on the 11th day of April, 1908, he paid to the treasurer of the company the sum of $15, and demanded that 20 cubic inches of water be furnished him for the purpose of irrigating a portion of his land which lies under the ditch; that at the time he made this payment he was informed that the money would not be accepted upon the terms upon which it was tendered; that it would be received and receipted for as a credit on his past due assessments, and

that he could not be furnished any water until he had paid such assessments in full. A receipt was given to the plaintiff for the sum of $15 paid on account, and he was informed at the time that unless the money was so applied it would not be received at all. Plaintiff took the receipt thus issued to him, refused to pay the balance of his assessments, and immediately brought this action to compel the corporation to furnish him 20 cubic inches of water according to his demand made upon the treasurer.

Upon the foregoing facts, which were clearly established at the trial, the district court found for the plaintiff and awarded him a peremptory writ of mandamus compelling the defendants "and their successors in office, to deliver water to the relator during the irrigation season upon demand and the payment of the reasonable price or charges therefor made by the respondent company during such irrigation season, for the irrigation of his land that is included in the respondent's appropriation, so far as its supply will permit, and not to exceed seven-tenths inches per acre." To this judgment the defendants duly excepted, and, as above stated, have brought the case here by appeal.

It will be observed that the writ does not respond to the prayer of the plaintiff's petition, and it is apparent that the district court in granting relief to the plaintiff followed the rule announced in *Enterprise Ditch Co. v. Moffitt*, 58 Neb. 642, 76 Am. St. Rep. 122, 45 L. R. A. 647, where it was held that the fully paid-up stock of a corporation is the personal property of the owner, and is not subject to general or specific assessments. It was found by the trial court, as a matter of law, that the plaintiff's stock was nonassessable, and the delinquent assessments thereon for maintenance were declared void. Defendants contend that the rule in that case has no application to the facts in the case at bar; and we are of opinion that this view of the question is correct.

It clearly appears that the members and stockholders of the corporation have, by their by-laws and plan of

operation, brought themselves fully within the provisions of section 6845; Ann. St. 1909, and are now a mutual irrigation company. By this section it is provided: "Any corporation or association organized under the laws of this state for the purpose of constructing and operating canals, reservoirs and other works for irrigation purposes and deriving no revenue from the operation of such canal, reservoir or works, shall be termed a mutual irrigation company, and any by-laws adopted by such company prior to, or after the passage of this act, not in conflict herewith, shall be deemed lawful and so recognized by the courts of this state; provided, such by-laws do not impair the rights of one shareholder over another."

It would seem that the by-laws and plan of operation adopted by the defendant company are fully authorized by, and not in conflict with, the provisions of the section above quoted. We are therefore of opinion that this case should be ruled by *Omaha Law Library Ass'n v. Connell,* 55 Neb. 396. In that case it appears that the organizers of the Omaha Law Library Association were of opinion that certain current expenses would have to be met in order to carry out the purposes of the organization. Books would have to be purchased from time to time to keep up the library, rent and taxes would have to be paid, there would be expenses of light and fuel, janitor and librarian services to be provided for, and, with this in mind, the promoters of the corporation by its articles of association authorized its board of directors to enact such a by-law as the one in controversy, namely, one to meet the current expenses of maintaining the library, and it was said: "The by-law, then, is not inconsistent with the law authorizing the creation of a corporation, nor is it inconsistent with the corporation's charter." It was further said: "Connell also interposed as an answer to this action that during the time in which the dues sued for herein had accrued he was not engaged in the practice of law and had no opportunity of enjoying the privileges and the use of the library. This was no defense. The by-law im-

poses the annual due upon the stockholder, and so long as he is a stockholder he is liable for the dues whether he uses the library or not. Being a stockholder he has the privileges of the library, and with the privileges go the burdens."

It is apparent, in the case at bar, that after the defendants' ditch was in operation it was found necessary to provide a fund for its maintenance, and in order to do so the by-laws in question were adopted. The plaintiff assented thereto and signed the same, and he is equally bound thereby with all of the other stockholders of the company. In order to carry out the purposes of the organization and furnish water for irrigation to the stockholders, it was necessary to provide for the maintenance fund above mentioned, and if one of the stockholders can refuse to pay his proportionate share thereof then another can, and so on, and the whole enterprise would fail. While this maintenance fund is apportioned among the stockholders in accordance with the amount of stock held by each of them, still it is not, strictly speaking, an assessment upon the capital stock. The manner of its collection has been fixed and determined by the mutual agreement or contract of the stockholders, and there can be no doubt but such contract is legal and enforceable according to its terms. This being so, the plaintiff, who refused to pay his share of the maintenance fund, was not entitled to demand and receive water until such payment was fully made. Therefore he was not entitled to the relief demanded, and judgment should have been for the defendant company.

For the foregoing reasons, the judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.